■ Marriott Corporation et al., Appellants, v Rogers & Wells, Respondent. — Order, Supreme Court, New York County, entered February 13, 1980, which granted defendant's motion to the extent of permitting defendant law firm to deposit certain escrow funds in a "blocked" bank account and to serve an interpleading complaint upon the Pahlevi Foundation of Iran and upon the Alavi Foundation of Iran, and denied plaintiffs' cross motion for summary judgment, unanimously reversed, on the law, with costs, defendant's motion denied in its entirety and the cross motion granted. In July of 1974, the corporate plaintiffs (Marriott) entered into contracts with the Pahlevi Foundation of Iran (Foundation) to design, construct and manage a hotel in Iran. On December 13, 1977, the above parties agreed to terminate the design and construction agreement and to modify the remaining contracts. This latter agreement provided for the payment by Foundation to Marriott of the sum of 1.2 million dollars "in full for all work done to-date pursuant to the contracts" to be paid as follows: "(a) $1,150,000 shall be paid upon execution of this Agreement; and (b) $50,000 shall be placed in escrow (pursuant to the escrow agreement to be executed) with the firm of Rogers & Wells, New York, New York, and shall be remitted to Marriott upon the satisfactory performance of their obligations pursuant to paragraph 6." Paragraph 6 provides: "Marriott will correct or cause to be corrected, at no additional cost to Owner, any errors or omissions in the plans and specifications prepared pursuant to the Design Agreement which have been delivered to Owner, or any omitted items required under Sections Three, Four or Five of the Design Agreement (Except Section 5.1 (J)(8)) if written notice of such errors and omissions is given by Owner to Marriott within one hundred and fifty (150) days from the date of this Agreement." Two weeks thereafter, the parties entered into an escrow agreement which provided in pertinent part: "If you have been advised by the Foundation and Marriott, that Marriott has not fulfilled its obligations in accordance with paragraph 6 of the Agreement you shall deliver said funds to the Founda-

tion. If Marriott performs its obligations in accordance with the terms of paragraph 6, you shall, upon written notice from Marriott and the Foundation, deliver said funds to Marriott." It is conceded that the 150-day period commenced on December 27, 1977, and terminated on May 26, 1978. At the end of this period Marriott had not received any notice of alleged errors, omissions, or both as required. When Marriott requested the payment defendant informed Marriott that they were seeking confirmation from the Foundation that plaintiff had satisfactorily performed all of its obligations. Shortly thereafter defendant notified plaintiff that the Foundation was willing to release the escrow funds on receipt of certain documents. Marriott, although insisting that these papers were not required for the release of funds, decided "in the interests of maintaining an atmosphere of cooperation" to provide a list of the documents requested. In fact the record indicates that the Foundation agreed to pay an additional fee of $2,500 for a certain group of these records. Marriott delivered the records but continued to maintain its position that this was "strictly an accommodation to your clients". In January of 1979, the defendant returned these documents to Marriott informing it that they had "been unable to obtain verfication from the Foundation, or its authorized agent" that the documents were "complete and acceptable", and until defendant received such assurance, they would "continue to hold the $50,000 in escrow". On or about November 1, 1979, Marriott commenced this action seeking the money held in escrow and a declaration of the rights of the parties in and to said sums. Defendant served an answer six days after then President Carter issued his executive order blocking Iranian government property. In its responsive pleading, the defendant denied any knowledge as to the rightful owner to the escrow funds and asserted that the executive order served as the predicate for not paying the funds over to Marriott. Marriott then moved for summary judgment which was denied upon the finding that "issues of fact [exist] as to whether the escrow agent has received sufficient notification from the Pahlevi Foundation to release the funds", and Special Term permitted the deposit of the $50,000 into an account "blocked * * * in accordance with the Executive Order issued on November 14, 1979." There are no issues of fact in this matter that would warrant a denial of plaintiffs' motion for summary judgment. The December 13, 1977 agreement clearly states that the $50,000 was to be remitted to Marriott. The only question with reference to this $50,000 was the date on which the money was to be delivered. This agreement stipulated that payment was to be rendered "upon the satisfactory performance of their [plaintiffs'] obligations". Reference was then made to an additional clause which required Marriott to correct errors or omissions if notice of any alleged errors was given to the plaintiff within a precise interval. There is no dispute that such notice was not forthcoming. Accordingly, there is no issue for the court to decide with reference to whether Marriott had satisfactorily performed its obligations under the contracts. The contracts clearly indicate that the total sum of $1,200,000 was being paid for services already performed and was the consideration for terminating the contracts. However, since the language in the escrow agreement is vague and indefinite, the circumstances surrounding its making must be examined in order to determine the intention of the parties. (20 NY Jur, Escrow, § 4.) The other agreements themselves provide the appropriate answer. Release of these funds was conditioned upon satisfactory performance of certain acts. Once these conditions had been complied with by the beneficiary (Marriott), the latter then became fully entitled to delivery of the property deposited for its benefit. It is obvious here that title to the money

is certainly not in the defendant. In fact, title to the escrow funds passed to Marriott when the entire sum became payable. Although the money was in an escrow account held by defendant herein, title to the money was in Marriott subject to the above conditions which Marriott complied with. Nor may the defendant create conditions that would thwart the logical intention of the parties to the agreement. The 150 days set forth in the agreement elapsed without notice from the Foundation. Defendant could not then create additional conditions not agreed to or anticipated by the parties. The defendant law firm took the position before this court that it could not reach its client, the Pahlevi Foundation of Iran, and accordingly it could not comply with the escrow agreement. The defendant further insisted that the plaintiff be required to obtain such release from the Pahlevi Foundation of Iran. This court will not impose such irrational conditions upon any party. Since there is no issue of entitlement to the funds by plaintiff, summary judgment should have issued in its favor. The United States Department of Justice has filed a "Statement of Interest" in this appeal. This document asserts that the recent accord entered into between the United States Government and the Government of Iran in all probability applies to this action. The Federal Government would have this court stay all State court proceedings. However, after a careful analysis of the facts before us, we have concluded that this agreement has no applicability to this matter. The money held in escrow became due and owing more than one year prior to the President's executive order. Such pre-existing claims are not covered by the agreement entered into between our Government and the Iranian Government. In addition, the $50,000 is part and parcel of an over-all sum paid outright by the Foundation to Marriott for services rendered in the past, and is not the property of the Government of Iran or any of its entities. Accordingly, the trial court erred in directing that the $50,000 be deposited in a "blocked" account. Concur — Ross, J.P., Carro, Bloom, Fein and Lynch, JJ.